UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK Z. and M.Z.,

    Plaintiffs,                         Case No. 22-10007

v.                                       Hon. Denise Page Hood

PRIORITY HEALTH MANAGED
BENEFITS, INC. and THE MICHIGAN
DENTAL ASSOCIATION HEALTH PLAN,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT PRIORITY HEALTH
MANAGED BENEFITS, INC.'s MOTION TO DISMISS [ECF No. 9]**

**I.    INTRODUCTION**

This lawsuit arises out Plaintiff's claims that Defendants: (1) wrongfully denied them benefits under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §1132(a)(1)(B); and (b) violated the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), specifically, 29 U.S.C. §1132(a)(3). Defendant Priority Health Managed Benefit, Inc. ("PHMB") has filed a Motion to Dismiss, ECF No. 9, which has been fully briefed. For the reasons that follow, the Motion to Dismiss is granted.

1

## II. BACKGROUND

Defendant The Michigan Dental Association Health Plan ("MDA") is a self-funded employee welfare benefits plan under ERISA, and MDA has a self-funded group health insurance plan (the "Plan"). PHMB is a third-party administration company, and it was the claims administrator for the Plan with respect to the claims filed by Plaintiffs in this case.

On October 1, 2014, MDA agreed to contract with PHMB as the third-party administrator for the Plan. *See* ECF No. 9, Ex. A (Administrative Services Agreement) (the "Agreement"). The Agreement provides that MDA is "solely responsible to determine the design of the Plan, including the benefits to be provided, eligibility for coverage, and the funding method to be used for the Plan." *Id*. at 2. The Agreement further provides that MDA's Board of Trustees is the plan administrator and named fiduciary under ERISA. MDA retained "the responsibility and discretionary authority to decide all questions of eligibility and entitlement to benefits and determine the amount . . . of payment of benefits . . . and interpret the provisions of the Plan for purposes of resolving any inconsistency or ambiguity, correcting any error or supplying information to correct any omitted term." *Id*. at 2. MDA also "retain[ed] sole discretionary authority to make final

2

determinations concerning eligibility and entitlement to benefits pursuant to any claim." *Id*. at 4.

The Agreement states, "[PHMB] as a third party administrator merely processes claims and does not insure that any medical expenses of individuals covered by the Plan will be paid." *Id*. at 3. PHMB is bound to "strictly follow the terms of the Plan." *Id*. at 4-5. The Agreement expressly states that PHMB is not a fiduciary or administrator of the Plan. *See id*. at 8-9 ("Not a Fiduciary. [PHMB] is not the Plan Administrator or administrator as defined in ERISA."). Under the Agreement, PHMB served as an independent contractor, carrying out the terms and conditions of the Plan as defined by MDA. *Id*. at 14. at 14, 16-17. The Plan requires prior certification for some services, including "[a]ll inpatient services (including inpatient hospice services, inpatient mental health services and inpatient substance use disorder services)." ECF No. 9, Ex. B at 18. But,

> If required prior certification is not obtained, the Benefit Administrator [PHMB] will review the claim after you receive the services. If it is determined that the care received was medically/clinically necessary and appropriate, the care will be covered and a penalty may be applied. If it is determined that the care received was not medically/clinically necessary and appropriate, the charges will not be covered.

*Id.*

The Plan expressly excluded certain services, including the following:

3

> **Mental Health Services.**  The following services are not covered:
>
> - Care provided in . . . wilderness therapy programs; . . .
>
> \* \* \* \* \*
>
> **Not Medically/Clinically Necessary.**  Services and supplies that we determine are not medically/clinically necessary according to medical and behavioral health policies established by the Benefit Administrator . . .

*Id.* at 37.

Plaintiff Mark Z. was a participant in the Plan, and his daughter, M.Z., was a beneficiary of the Plan at all relevant times.  Plaintiffs are residents of Washtenaw County, Michigan.  M.Z. was struggling at school, home, and in the community, and Mark Z. enrolled her at a wilderness therapy program at Evoke at Entrada in the state of Utah in July 2018. ECF No. 1, PageID.2-3 (¶¶ 1, 4).  Evoke at Estrada is a licensed wilderness therapy program located in Utah which provides sub-acute short-term stabilization and assessment for adolescents with mental health, behavioral, and/or substance abuse problems. *Id.* at ¶ 4.  M.Z. began residential treatment there on July 20, 2018 and was discharged on October 23, 2018. *Id*. at ¶ 4.

Plaintiffs did not seek prior certification before M.Z. began her stay at Evoke at Entrada.  On January 11, 2019, PHMB denied coverage on the basis that wilderness therapy programs were not a covered benefit under the terms of the

4

Plan. *Id*. at ¶ 23. Plaintiffs appealed this decision, and on May 2, 2019, PHMB wrote and maintained its denial of coverage. *Id.* at 28.

Following her discharge from Evoke at Entrada, M.Z. enrolled at Vista Sage, and she was there from October 24, 2018 through May 9, 2019. *Id*. at ¶¶ 4, 31. Vista Sage is a licensed residential treatment program, also located in Utah, that provides sub-acute inpatient treatment for adolescent girls with mental health, behavioral, and/or substance abuse problems. *Id.* at ¶ 4. On November 20, 2018, PHMB wrote and denied coverage on the basis that M.Z. did not meet the Plan's guidelines for medical necessity of residential treatment. PHMB stated that M.Z. was: (a) "not exhibit[ing] any active mood, anxiety, or psychotic symptoms;" (b) was not "suicidal, homicidal, or psychotic;" (c) was not experiencing active withdrawal symptoms; and (d) could be effectively treated on an outpatient basis. *Id.* at ¶¶ 31, 32.  PHMB also concluded that the treatment provided to M.Z. at Vista Sage was in a "luxury treatment program," which it determined was excluded from coverage under the Plan. *Id.*

Plaintiffs appealed that decision, but on May 2, 2019, PHMB maintained its denial of coverage for the Vista Sage program. PHMB based its denial of coverage on the following: (a) Vista Sage was a luxury treatment program providing treatment that was not evidence based; (b) M.Z's condition did not meet the

5

medical necessity criteria; and (c) PHMB claimed Plaintiffs failed to obtain prior approval before M.Z.'s admission to Vista Sage. *Id*. at ¶42.

## III. APPLICABLE LAW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

PHMB contends that it is not a fiduciary for purposes of ERISA because it had no discretion or control over the Plan, so it is not liable for any violations of

ERISA. Plaintiffs do not challenge PHMB's assertion that it is not the plan administrator or fiduciary as defined under § 1002(21)(A) of ERISA.[1] Plaintiffs insist that the issue before the Court is whether PHMB made the final adverse decision regarding Plaintiffs' claims(s), which would make PHMB a proper defendant because it was the final decisionmaker when it "denied coverage and the subsequent appeals thereof." (citing ECF No. 9, PageID.18)).

### A. Final Adverse Benefit Determination

The parties agree that an ERISA fiduciary is defined "not in terms of formal trusteeship, but in functional terms of control and authority over the plan." ECF No. 9, PageID.23 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). "Control and authority" is critical in interpreting ERISA's definition of fiduciary, which states in relevant part:

---

[1] Plaintiffs state in their response brief:

> Plaintiffs agree that "MDA's Board of Trustees is the plan administrator and named fiduciary under ERISA." (ECF No. 9, PageID.19). Further, PHMB is not an insurer and "as a third party administrator merely processes claims and does not insure that any medical expenses of individuals covered by the Plan will be paid." (ECF No. 9, PageID.19). We agree that the Administrative Services Agreement ("ASA") between PHMB and Defendant Michigan Dental Association Health Plan (MDA Plan) further states that even though the ASA names PHMB the fiduciary for administering the claim appeal procedures under the plan, PHMB is bound to "strictly follow the terms of [MDA's] Plan." (ECF No. 9, PageID.19). And we agree that PHMB is not a plan administrator, has no discretionary authority regarding the MDA Plan whatsoever, and that the MDA Plan administrator (not PHMB) "retains the 'sole discretionary authority to make final determinations concerning eligibility and entitlement to benefits pursuant to any claim.'" (ECF No. 9, PageID.19-20).

ECF No. 18, PageID.194-95.

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A).

The Sixth Circuit has stated:

> According to ERISA, a plan "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). This Court has found that "the definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition" such that the issue of whether one is considered a fiduciary does not turn upon formal designations. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999). Therefore, for purposes of ERISA, a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets. *See Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir.1998).

> Under ERISA a person is a fiduciary only with respect to those aspects of the plan over which he or she exercises authority or control. *See Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir.1998). When an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a "fiduciary" for ERISA purposes. *See Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir.1993). An employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims. *Chiera v. John Hancock Mut.*

8

*Life Ins. Co.*, 3 Fed.Appx. 384, 389 (6th Cir.2001) (unpublished decision) ("Defendant [insurance company] is a fiduciary for purposes of ERISA inasmuch as it had a role in administering the plan because it had authority to accept or reject claims for losses under the group insurance policy as evidenced by the rejection letter that it sent to Plaintiff in response to her attorney's letter.")[.]

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006)

> *1.* Discretionary Authority or Control of Management of Plan
> Discretionary Authority or Responsibility in Administration of Plan

It is undisputed that "PHMB is not a plan administrator, [and] has no discretionary authority regarding the [Plan] whatsoever." ECF No. 18, PageID.195. PHMB bases its motion on the absence of discretion when making benefit determinations, stating:

> Since discretion is the key to unlocking claims for benefits under ERISA, it should come as no surprise that the Sixth Circuit has long held that a third-party administrator functioning as nothing more than a claims processor cannot be an ERISA fiduciary.

ECF No. 9, PageID.23 (citing *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991)).

Plaintiffs argue that PHMB places undue reliance on the formalities of the Agreement, rather than acknowledging its functional role in the claims process. Plaintiff insists that *Baxter* did not involve a case where the third-party administrator made a final adverse decision under ERISA, but instead was a case where the court focused on a failure of the participant to exhaust administrative

9

remedies. In *Baxter*, the plan required the participant "to request a review upon written application to the Company or the Plan Supervisor." *Id*. at 454. Plaintiff maintains that, if the participant in *Baxter* had followed plan procedures, the final decision would have been made by the plan administrator, not the third-party administrator. Plaintiffs then assert that, because PHMB, acting as the claims administrator, made the final adverse decision regarding Plaintiffs' claims, it was irrelevant that MDA retained the right to construe the Plan because MDA (the plan administrator) would not have made the final decision.

For those reasons, Plaintiffs contend that *Baxter* stands for the proposition that the party making the final adverse decision is a proper defendant. But, a review of *Baxter* reveals that no such rule was set forth by the *Baxter* court. Another Sixth Circuit case cited by Plaintiffs, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006), also does not set forth such a rule. In *Moore*, the third-party administrator and the employer agreed that the third-party administrator "exercised full authority in adjudicating Plaintiff's claim for benefits." *Id.* at 438. For that reason, the *Moore* court held that "[i]t was the [third-party administrator who made a decision with respect to Plaintiff's benefits, not [the plan administrator]. [The third-party administrator], and not [the plan administrator] is therefore the proper party defendant for a denial of benefits claim by Plaintiff." *Id.*

10

(citing *Kennard v. Unum Life Ins. Co.*, No. 01-217-B-K, 2002 WL 412067, at **1-3 (D.Me. Mar. 14, 2002) (unpublished opinion) (dismissing employer from benefits suit when insurance company, not employer, made benefit decisions.). For that reason, the Sixth Circuit concluded that the "district court did not err in dismissing [the plan administrator] from Plaintiff's suit for benefits." *Moore*, 458 F.3d at 438. *See also Van Loo v. Cajun Operating Co.,* 64 F.Supp.3d 1007, 1015 (E.D. Mich. 2014) (citing *Moore*) ("the proper defendant to a denial of benefits claim is the party who exercised final authority over the claims determination."). In *Van Loo*, however, although the plan named the employer as plan administrator, it also stated:

> [Third party administrator] shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

*Id.* at 1015-16.

Plaintiffs' argument (and, for that matter, Defendant's argument) fails to address the critical differences between this case and *Moore* and *Van Loo*, respectively. In *Moore*, the third-party administrator was the insurance company that provided the insurance plan in dispute to the employer – the employer did not operate its own self-funded health plan. *See Moore*, 458 F.3d at 424 ("Lafayette

11

[the third-party administrator] became MTA's [the plan administrator] provider of group life and disability insurance in March 1996."). Under those facts, it is logical that the third-party administrator was the entity that had authority and discretion to determine claims – it was interpreting the very policy upon which the claim was based.

In *Van Loo*, the third party administrator served "as the claims review fiduciary . . . [for] the Plan . . . , ha[d] . . . discretionary authority to interpret the Plan and . . . determine eligibility for benefits [and its] [d]ecisions [were] complete, final and binding on all parties." *Van Loo*, 64 F.Supp.3d at 1015-16. Unlike this case, the third party administrator expressly was: (a) identified as the fiduciary; and (b) granted full discretion and control over interpretation and determinations under the plan.

As PHMB argues, the critical issue before the Court is whether PHMB had any discretion over the Plan, which Plaintiffs concede PHMB does not. As the Agreement does not afford PHMB discretion, the Court finds MDA "did no more than rent the claims processing department of [PHMB] to review claims and determine the amount payable in accordance with the terms and conditions of the Plan." *Baxter*, 941 F.2d at 455 (quoting *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288 (11th Cir. 1989)). The fact that the Agreement expressly

12

provides that PHMB is not the fiduciary and MDA, not PHMB, retains the "sole discretionary authority to make final determinations concerning eligibility and entitlement to benefits pursuant to any claim," ECF No. 9, Ex. A at ¶ 4, distinguishes this case from *Moore* and *Van Loo*. The Court also notes that neither of these cases reference a "final adverse decision," and Plaintiffs do not cite any authority that supports their "final adverse decision" proposition.

This Court concludes, as the *Baxter* court did, that a third-party administrator's "duties under the plan were limited to processing claims and providing administrative services. Because [PHMB] was not a plan fiduciary, it was not a party from which [Plaintiffs] could recover under ERISA." *Baxter*, 941 F.2d at 453.

### 2. Authority and Control over Plan Assets

Plaintiffs also assert that PHMB is a proper defendant because PHMB's final adverse benefit decision regarding Plaintiffs' claims means that PHMB asserted authority and control over Plan assets. ECF No. 18, PageID.199. Plaintiffs disagree with PHMB's reliance on *Briscoe v. Fine*, 444 F.3d 478, 490 (6th Cir. 2006), for the proposition that a third-party claims administrator "could not be an ERISA fiduciary where the administrative services agreement did not give 'discretionary authority over plan management.'" ECF No. 9, PageID.24 (quoting

13

*Briscoe*, 444 F.3d at 490). Plaintiffs contend that the next section of *Briscoe* controverts PHMB's argument because *Briscoe* provides that a claims administrator with no discretionary authority can be an ERISA fiduciary if it exercises any control over plan assets. Citing *Briscoe*, 444 F.3d at 490-95, specifically, the following passage:

> The district court therefore erred in requiring, as a condition of fiduciary responsibility, that the type of authority that PHP exercised over the plan assets had to be "discretionary." This confusion stems from the differing language in two adjacent clauses of ERISA's definition of "fiduciary." Under one clause, a person is a fiduciary to the extent that he or she "exercises any *discretionary authority or discretionary control*" over the management of the ERISA plan. 29 U.S.C. § 1002(21)(A)(i) (emphasis added). The second part of the same sentence, however, confers fiduciary status upon a person to the extent that he or she "exercises *any* authority or control respecting management or disposition of [the plan's] assets." *Id*. (emphasis added). We will presume under prevailing canons of statutory construction that Congress's omission of the word "discretionary" in the second part of the sentence was intentional, and that the threshold for acquiring fiduciary responsibilities is therefore lower for persons or entities responsible for the handling of plan assets than for those who manage the plan. *See, e.g., Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration in original) (citation and quotation marks omitted).

*Briscoe*, 444 F.3d at 491. The *Briscoe* court ultimately held "that PHP exercised at least partial control over plan assets and, to the extent that it did so, qualifies as a fiduciary." *Id*. at 494-95. For this reason, Plaintiffs argue that the crux of the

14

Court's analysis should not be whether the claims administrator had discretionary authority, but whether it "exercised at least partial control over plan assets." *Id*.

PHMB contends that the third-party administrator in *Briscoe* "exercised control over the assets of the Company's healthcare plan still in [the third-party administrator's] possession when the Company became insolvent." *Briscoe*, 444 F.3d at 491-92. The Court agrees. Unlike in *Briscoe*, where the third-party administrator's "unilateral disposition of funds held in an account over which it exerted control ma[de] it a fiduciary to the extent that it exercised such control upon the termination of its relationship with the" plan administrator, *Briscoe*, 444 F.3d at 490, there is no indication that PHMB exercised any control "over an ERISA plan's money" *vis a vis* MDA with respect to the Plan. *Briscoe*, 444 F.3d at 494. The Agreement expressly provides that PHMB is "not . . . trustee of any assets associated with the Plan," ECF No. 9, Ex. A at 4, and Plaintiffs have not alleged how or why PHMB had control of the Plan's assets.

3. Conclusion

For the reasons stated above, the Court grants PHMB's Motion to Dismiss with respect to Plaintiffs' ERISA claim against PHMB.

B.  MHPAEA Claim

Plaintiffs allege that PHMB violated the MHPAEA because it PHMB applied more stringent criteria in evaluating the mental health and substance use disorder claims at issue in this case than it would have for analogous medical/surgical claims.

MHPAEA "prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1219 (D. Utah 2019) (emphasis added) (citations omitted). Violations of MHPEA can arise from the plan documents "as written and in operation." 29 C.F.R. § 2590.712(c)(4)(i); *see also Anne M. v. United Behavioral Health*, No. 2:18-cv00808-HCN-DAO, 2020 U.S. Dist. LEXIS 159453, at *9 (D. Utah Aug. 31, 2020).

Plaintiffs contend that PHMB, as part of the operation of its claim procedures, caused the distinct harm from evaluating mental health/substance use disorder claims more strictly than analogous medical/surgical claims.  For that reason, Plaintiffs claim that PHMB is subject to equitable remedies the Court may order upon a finding that Plaintiffs prevail on their (yet to be filed) dispositive motion. Those remedies would include declaratory and injunctive relief that are typically available in equity. *See Dobbs*, D.B. and Roberts, C.L., Law of Remedies at 49

(3rd ed. 2018) (noting that "[t]he most common equitable remedies are coercive" and "[t]he most general term for a coercive remedy is an injunction"); *see also id.* at 51 (describing "declaratory judgment" as an equitable remedy "injunctive in form but

declaratory in effect"). Plaintiffs conclude that PHMB's actions as it related to the denied benefits claim as well as its role in the MHPAEA violations demonstrate that PHMB's motion to dismiss should be denied.

PHMB first notes that is not a fiduciary under the Agreement and therefore is not liable for the breaches of fiduciary duty Plaintiffs allege in Court II. PHMB insists that MDA is responsible for the terms and conditions of the Plan, both as written and in its operation, under 29 C.F.R. § 2590.712(c)(4)(i). PHMB asserts there is no disparity demonstrated by the Plan's documents either as written or enforced.

"A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 364, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). But, PHMB argues, there is no reasonable inference which may be drawn that PHMB is liable under the Plan as MDA retains exclusive control and authority over the Plan.

17

The Court also finds significant the fact that the Plan requires utilization review for admission to any acute or sub-acute in-patient treatment. The Plan does not distinguish between facilities for mental health benefits or medical and surgical benefits. The Plan requires prior certification for all inpatient services, no matter what kind of facility it is. PHMB further asserts that its role in this process was to receive Plaintiffs' retroactive claims for benefits, which were not prior certified (there seems to be some ambiguity whether prior certification was sought for the Vista Sage program). As PHMB states, both of Plaintiffs' claims (for her treatment at Evoke at Estrada and Vista Sage) were explicitly precluded by the terms of the Plan (wilderness therapy programs and luxury treatment programs are listed exclusions). As it did not have discretion to interpret the Plan, PHMB did not possess discretion to deviate from those terms, amend those terms, or enforce those terms differently, and the parties agree on that point. As there is no disagreement regarding PHMB's discretion, the MHPAEA claim against PHMB is dismissed.

## V. CONCLUSION

For the reasons stated above,

IT IS ORDERED that PHMB's Motion to Dismiss [ECF No. 9] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' cause of action is DISMISSED WITH PREJUDICE with respect to PHMB only.

IT IS FURTHER ORDERED that Plaintiff's cause of action against MDA REMAINS PENDING.

Dated: May 22, 2023

                                          s/Denise Page Hood
                                          DENISE PAGE HOOD
                                          UNITED STATES DISTRICT JUDGE